Our next case is United States v. Pennycook No. 24-3210, and we'll be happy to hear from Appellants' Council. Good morning, Your Honors. My name is Keith Donahue for Appellant Steven Pennycook. I'd like to reserve three minutes of my time for rebuttal. That'll be granted. Your Honors, the principal question on this appeal concerns the process due a defendant facing re-imprisonment for allegedly violating a condition of supervised release. And no one here today is saying that a defendant in revocation proceedings has all the rights due and accused in the first instance. But because such a person does face a deprivation of liberty, he has at least a due process right to reasonable opportunity to test adverse evidence. And that's why the Supreme Court held in Morrissey v. Brewer that among the minimum requirements of due process in revocation proceedings is a right to confront the government's witnesses unless good cause appears for not allowing confrontation. This court's precedent commands that absent good cause for a witness's absence, hearsay cannot stand in for live testimony unless it bears unusually compelling indicia of reliability. Now, here the government did not show good cause for the witness's absence. The real reason she did not appear is because the government made no effort to have her at the hearing. It did not so much as issue a subpoena. The government had her address, it had her phone number. There's no suggestion she attempted to... They did reach out to her, though. I mean, you said they made no effort. There was a phone call from the probation officer six days before the hearing, simply asking Ms. Jones to call the prosecutor. And we don't actually know if she did call the prosecutor. The AUSA didn't make any representation about that at the hearing. In fact, the AUSA, the government never even proffered that there was good reason she wasn't present. Well, we saw they speculated about the possibility of child care issues and other things. Well, as you said, they speculated about that. There was no showing of that. And that was actually the judge who first introduced... I believe it was the judge who first introduced these theories, including the notion that it was raining that day. So that would have made it harder for her to get to the courtroom. We would submit Belay's rather low regard for the right of confrontation. As this court said in Lloyd, and as no one disputes, there is at least a limited right to confrontation in revocation proceedings. And I would submit that the ordinary rule has to be that hearsay cannot be the basis for depriving a person of liberty. If an exception were to be made in this case, it would swallow that rule. Because here we have virtually no cause except for the phone call that Your Honor mentioned, if that goes any distance at all. And there are many reasons to question whether the statement is true. It wasn't made until a month after the events it alleged. The declarant did not make... You're saying not the statement from the AUSA, Jones's statement. Correct. Okay. Correct. Not made until a month after the fact. No police report made, although Ms. Jones did tell the probation officer initially that she made a police report. That turned out not to be true. We have no medical records corroborating the claim of injury. As to the photographs, for all we know, they could have been created before the declarants even met my client. We have no time stamps on them whatsoever. So that's very limited corroboration. And to say that that could be strong enough to simply overwhelm my client's constitutionally guaranteed right really would make a mockery of the due process rights that defendants retain in revocation proceedings. Is an additional concern here that Officer Mizalinski also did not show? This is the one who was dealing with Jones, right? Yes. I think that is very much an additional concern. And the government did not show cause for not even having that officer in the courtroom. If she'd been in the courtroom, at least she could have been asked about her demeanor. Was this raised, though, during the hearing? Where is this other officer? It was mentioned that she existed, yes, at page 53 of the appendix. We have a reference to her name and that she's the person who met with Ms. Jones. Was that a basis of objection or concern there? Well, I believe it may have been a basis of concern, but there was no objection specifically made to that, no. Does the district judge need to know with certainty why the person's not here? Or could he look to the facts adduced at the revocation hearing itself to infer reasons why she wasn't there? Well, I think he would have to look at, if the person wasn't there, facts adduced at the hearing. But there were no facts adduced here. Again, we have the judge sort of musing out loud about possible reasons she couldn't be there. I suppose the fact that it was raining outside was established. We'll let judicial notice be taken of that. But anything else was really speculative. You know, we don't know at all why she wasn't there. We do know that the government made singularly limited efforts to secure her presence. Does your hearsay objection extend to those photographs that you talked about, undated and all? Well, not to their admissibility, Your Honor. I think that objection was made to their admissibility. Along those lines, I noticed several times that your brief mentioned that a photo of the photograph was admitted as opposed to the original. Are you disputing the authenticity of what's in the record here? I was a little confused about that. The point I was trying to make was that it was a photograph of the statement, not a photograph of the photographs. The photographs themselves were presented. But this three-page handwritten statement, you would think we'd either have the original or at least a photocopy. But we don't have a photocopy. We have three pages of photos taken with a phone camera. If you're not worried about authenticity, why does it matter? Why does it matter, then, if you're not worried about authenticity? Well, because this goes to the importance that the probation officer who met with Ms. Jones wasn't present. We weren't able to ask her, what's the nature of this exhibit? One possibility, in fact, really the only one I was able to think of, is that Ms. Jones refused to leave it there. For some reason, she was willing to write it out and let them photo it, but not keep it. So that, although as your Honor pointed out, there was no objection, underscores the lack of opportunity to confront anything about this statement at the revocation hearing. Well, under your theory of good cause, what should the government, what could the government show to justify the declarant's absence? What would satisfy? Well, in the Barksdale decision from this court in 2024, the court wrote in a manner indicating that only a threat to witness safety, or I assume it was presuming or a completely unavailable witness, would suffice as good cause. And the recent Rose decision is also quite illustrative in this regard, because the court found that the government's diligent and thorough efforts to bring the witness to court sufficed as good cause. It's clear from the Rose discussion that had it not been for that cause, the court declined to say that the reliability of the statement would have been enough, although there were many more in this year of reliability in that case than here. Now, the district judge seemed to find your client to be not credible. If we exclude consideration of Ms. Jones' statement, is that enough to, is the finding of lack of credibility of your client enough to sustain the ultimate holding? I don't think so, Your Honor. The court declined to credit my client's account of an automobile accident. So it's dispositive on that point. We have a finding that there was no automobile accident as the cause of these injuries. But that doesn't mean that there was an assault as the cause of these injuries. As I mentioned, the injuries could have been sustained long before the declarant even met my client. And even if that's not the case, they could have been sustained by certainly any other number of means. The judge actually made a remark to that effect, saying, well, these photos are consistent with her account and perhaps with other things as well. They're not dispositive in and of themselves. On the sentencing issue, do you agree that we review for plain error? Yes. I would say that the government has waived its argument from the third prong of plain error that it attempted to raise by its 28-J letter. If you look at its brief, there's no argument. When you say waived, do you mean forfeit? No, I mean waived, as in the usual rule that if a party doesn't raise contention in its principal brief, it is waived. It's not beyond excusing. Under the court's Albertson decision, it will be excused in extraordinary circumstances, as Albertson says. But there's certainly nothing like that here. And in our reply brief, I relied on the government not raising an issue by just stating summarily there appears to be no dispute as to the third and fourth prongs of the plain error standard. There is also no dispute as to the second prong now that – well, I shouldn't say that. I'm not sure there's no dispute, but there should be no dispute as to the second prong now that Asteris has been decided. Asteris said you may not consider retributive considerations in revoking supervised release. It includes some limiting – The argument is that the district judge mentioned twice punishment, right? Right, and punishment is the only thing the district court mentioned twice. Its statement was so spare that any other factor was only mentioned once. From what we have from these spare remarks, I think it's fair to infer punishment was the leading concern of the district court. And we also don't even know for that matter for certain if the district court was referring to punishing the violation conduct or punishing the original offense. I believe the word he used was offense because he really was, to some degree, simply reciting the words of Section 3553A. Do you have any more, counsel? Well, I would perhaps just direct the court's attention to the cases that we briefed so closely, Comiteau and Coleman. And Coleman, in particular, is nearly on all fours with this case. That's from the 8th Circuit in 2021, discussed at some length in all three briefs before the court. There, the declarant was also an estranged girlfriend of the defendant. But she made a report promptly after the alleged attack. She went to police. There was a video taken of her. She provided the name of an eyewitness. And extensive efforts were made to bring her to court. The probation officer even orchestrated a kind of stratagem whereby she offered to meet with this homeless witness to discuss living arrangements in order to serve her with a subpoena. But the witness didn't show up at that meeting. So on both considerations that Lloyd instructs us to look to, the government had a much stronger case in Coleman than it does here. And nonetheless, the 8th Circuit held it fell short of the threshold required, given the critical importance of the hearsay to the revocation decision. Thank you. Judge Roth, do you have anything? I have nothing further. Thank you. OK, thank you. OK, thank you, counsel. We'll get you on rebuttal. Good morning, Your Honor. May it please the court. Good morning. As always, on behalf of the government. Your Honor, with respect to the evidence that was introduced here, there are really two key points to make. One is, of course, that this is a balancing test. This is balancing the right of confrontation against the good cause that's put forward by the government. And we're also told by this court in Lloyd that there can be cases in which the statement is so reliable that that itself carries the day, regardless of good cause. But the second very important point that I'll cover as I speak in response to the court's questions is the standard of review. This is an abuse of discretion standard, and we know that Judge Gallagher looked at this issue very carefully. On that first issue you're talking about. On the first issue. His plain error on the second, and hopefully I'll have a couple minutes later on to talk about that. But with regard to the first issue, Judge Gallagher handled this very carefully. He assessed every last factor that one could consider. He did it not only at the hearing, but then in a written opinion as well that he issued afterwards. And that this court affords deference to. We have arguments going back and forth here, and I think one example. I'll go through other factors as well. But one example is the fact that this woman, Ms. Jones, went into the probation office herself, gave a detailed three-page written statement, gave her driver's license, her identifying information. He had a tremendous amount of detail in that statement. And so our position, we look at that and we say, well, this looks pretty reliable. I mean, for somebody to make that effort to go in to speak to a federal officer at risk of perjury. Now, my friend, Mr. Donahue, takes a different view. He comes here and says, well, no, this is an aggrieved woman who's at the end of a bad relationship. She has it out for him. I'm not saying that's unreasonable either. I could see how a fact finder could look at this and say. There are cases that go both ways, actually, in that type of situation. It does. And that's why we have district judges. And that's why we have judges who assess the facts, consider what the parties have to say. And that's why this court defers to what that competent judge does. That is just one of the many examples here of both sides looking at the same situation. And as good advocates do, Mr. Coker for the government and the district court, Mr. Donahue and his colleagues, they make their arguments and the district court made its decision. What about the confrontation aspect, though? No one could confront Jones. And actually, this Officer Malinsky as well. She wasn't called either by the government. Of course, ideally, we would present the witness and there would be confrontation. But what this court's precedent, and of course based on Morrissey, recognizes is that there will be cases in the supervised release violation context where it's permissible not to have that confrontation. As far as Officer Malinsky goes, that was not raised as an issue. I just glanced at the appendix. Both the government and the court asked one question of the probation officer saying who took this statement. And she said who it was. It wasn't an issue. The defense didn't raise it. Nobody's suggesting that this meeting didn't take place and all the information that came out of it wasn't produced to the government. And what we're left with is a statement that, as the district court said, just has many, many indicia of reliability. Also, while I'm talking about the standards of reading. Before you move on, just anything in the record, is there any information at all in the record about where and when the photographs were taken of Ms. Jones? Well, certainly Ms. Jones' representation and the very inference of her supplying these photographs is that they document the assaults. And by the way, this statement was not given a month after the incident. What she describes in her statement, and I know your honors have looked at it, is multiple incidents that took place beginning a month before. And you have those including a number of assaults where she's hidden the face. And those photos are very dramatic. They do, as again, looking at what the district court found, they do seem to suggest recent significant injury. There's no way to look at those photographs and conclude anything else. So again, the judgment, with regard to the reliability question also I should mention, that when we're drilling down into the facts here and saying, well, what does this mean, what does that mean, I think at that point we're really in clear error review. We're not even yet to that final abuse of discretion standard. This court said that in its recent Rose decision last month. Rose, of course, involves pretty much the same issue with different facts. But this court said in Rose, a district court's independent assessment of the hearsay's reliability ordinarily involves factual determination, which we review for clear error. That's really where we are with regard to the heart of the first issue. And when we look at the court's findings, what's reliable here? She voluntarily went to the probation office. She took the risk of being charged with a false statement. It was detailed. The court said her fear of the defendant was evident in the words written in her statement. She gave her contact information. She provided these pictures that the court found do appear on their face to be consistent with the allegation that she made that she was struck with an object with a firearm. And then we get to the point of the defendant's testimony. And, of course, that means an awful lot more than I think Mr. Donahue gives it. The defendant doesn't only give a flat denial of the assault, but he even gives this absurd explanation. He gives this very detailed account of a car accident where he's in the car and Ms. Jones is driving and she hits her head on the steering wheel. So he's coming up with this story to justify what we know, which is that she presented these injuries. And so that's significant. When the judge says, I don't believe this guy, which is essentially what the judge is saying. And, in fact, he's testified before me a number of times, and I've never believed him. The judge can infer from that also that there's credibility in the Ms. Jones statement, from the fact that this man comes in and tries to give a false explanation. Can you speak to the adequacy of the government's efforts to get Jones to the hearing? The government made an effort. It did not make an extraordinary effort. I'm not going to be honest with the court. We didn't send out a fleet of vehicles to go scoop her up. But they did make the call. To be honest and frank with the court, there's other information that's not in the record about phone calls that were made, but they were phone calls. There's nothing else. The effort was made. She was aware of the hearing. She did not appear. With respect to good cause, Your Honor, it's not completely accurate to say that all good cause means is that the government has to make efforts. In fact, what this court said in Lloyd, and it just repeated it a few weeks ago in Rose, is, quote, courts have recognized that a declarant's refusal to testify or threats made against the declarant may be good cause for his absence. And that's pretty much what we have here. It's pretty clear. We have a witness who was not going to come. She did not come. She was aware of the hearing, and she did not appear for it. Is that concerning? The judge, I mean, the judge admitted, I'm speculating here. It's raining. She has young kids. Maybe there's a child care issue. Yeah, I think that's appropriate. I mean, the judge, again, is looking at all the facts. She has a 5-year-old child who goes to school. No 5-year-old is in school for 8 or 9 hours, and yet this person is being asked to go to Allentown. And she's driving from Allentown, I guess. Go to Allentown from Philadelphia, which itself is going to take an entire day along with the testimony. There's really nothing supporting that. Even the judge said, I'm speculating here. Well, I think it's more than speculation. I think it's just based on common sense and lived experience. I'm not saying that's the only basis for the good cause finding, because it's not. The government did make that call. But, and again, being frank, of course, we could go out and get a warrant. But what we're dealing with here is a balancing test. And when you balance all of this, when you look at all those very significant exhibits of reliability, you look at the fact that she was aware of the hearing and didn't come, the judge made a fair decision, and certainly one that falls within his discretion and that this court should defer to under the abusive discretion standard. Unless my colleagues have another question on this particular issue, I'm interested in the other issue. Okay. You know, we've got a Supreme Court case here. I'm interested to hear what your reaction is there. Yes, I'm always interested in what Your Honor is interested in. With regard to that issue, I don't know where this waiver idea comes from. We filed our brief before the Asterix decision. We said at the time that the precedent of this court was that a judge can't- It was Young at the time, I think, right? Young, I think it was? Yes, I believe that's right. But the precedent of this circuit and a number of others, there was a split. That's why the Supreme Court took up the issue, was that a court could consider punishment when imposing sentence, not just for a violation of supervised release. And so our brief on this issue is one page, if you look back. Well, it doesn't look to us like punishment meant anything here, but whatever. This is the precedent of the court. So now we have Asterix. We haven't waived anything. Now we need to address it, and we haven't briefed it, but I do want to address it right now. Yes, please. We're on plain error review. And there are two reasons that the defendant's challenge does not survive on plain error review. One is we still do not have an error that is plain. And the reason is that the Supreme Court and Asterix very carefully, when it said you can't consider punishment, talked about you can't consider punishment for what the Supreme Court called the original offense, because that's the language of that piece of 3553A that Congress left out when considering a violation of supervised release. It's punishment for the offense. And the Supreme Court said, no, we're no longer talking about that original offense. You're not imposing additional punishment. You're looking at the violation. And what's very telling here is that Judge Sotomayor, Justice Sotomayor, in her concurring opinion, called the majority out on this. She says, in her opinion, because the majority frames the question as one about retribution for the original offense, it never decides whether the supervised release statute precludes courts from exacting retribution for the defendant's supervised release violation. So we actually still have that as an open question. I'm not going to say that this court's previous precedent is worth a lot at this point, but we have a very open question as to whether the judge can consider punishment for the violation, which, of course, many judges would be probably inclined to do when they see some bad thing that somebody on supervised release just did. And here, when you look at the judge's comments, it doesn't appear that he's talking at all about punishment for the original offense, which is what Esteros prohibits. All he said is, well, he said a lot about Mr. Petticoat's violations, but he said the sentence is also to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, period. And then later he said, and it's necessary here for punishment and to deter future violations by Mr. Petticoat, which really sounds like punishment for the violation and not for the original offense. And by the way, the circumstances of the original offense, which is where he possessed a gun, it was during the riots that were taking place in Philadelphia back in 2020, it's never mentioned. I mean, it doesn't come up at all during the violation hearing. So that's the first problem, is that on plain error review, we do not have an error that's plain, even after Esteros. And then second, we have- You read and you appropriately quoted the two times, but I mean, he mentions punishment twice. You're just saying it's punishment for what? And we don't know. It seems to be for the violation, but certainly he doesn't specify one way or the other. The way to handle this is for defense counsel to stand up and say, Judge, what are you talking about? And you know that this Esteros case is coming up, but there's no objection. And so the judge doesn't have the opportunity to do that. The second issue with regard to plain error is that third prong that they somehow safely waived, which, of course, the defense has the burden to show a reasonable probability that the result of the proceeding would have been different. And what I invite this court to do from the passage that I just read, where the judge mentions the word punishment twice, is take out the word punishment. Just take it out. And what you're left with is the judge saying, we have to protect the public from further crimes of Mr. Pennycook. I think it's also appropriate. Mr. Pennycook, I know I explained it, but his failure to heed prior warnings when violations could have been brought forward, it's necessary to deter further violations by Pennycook. At another point he said, I'm very concerned about what Ms. Jones reported here. I'm also very concerned about the multiple times you have violated and that you're using, you know, referring to drugs. So take out those two words punishment. And it is impossible to say that they meet their burden to show a reasonable probability that the sentence would have been different. The burden is on them at this point because the objections should have been made at that time. Unless the court has further questions. Judge Roth, do you have anything more? Nothing further, thank you. Okay. Thank you, counsel. We'll hear rebuttal. Thank you, Your Honor. To take the issues in reverse, I would direct the court's attention on second prong of the Plain Air Standard to page 2040, 2040 of Asteris. Because there the majority says, we agree with Asteris. District courts cannot consider 3553A2A when revoking supervised release. It's true that elsewhere in the opinion it talks about what it purports not to be deciding. But the statement I just read with you, read to you. What page is that again? 2040, 145 Supreme Court, 2040. Oh, no, I have the opinion right in front of me. Okay. Thank you. It's sort of shortly after the footnote that the government is focusing heavily on. And the footnote says what it says. I can't deny that. But it's just curious that right after those sort of caveats, the court speaks in this unqualified language. Do not consider these factors, quote unquote, when revoking supervised release. So, you know, Mr. Dousmer fairly enough points to contrary language. But I think he may be mistaken in the meaning of Justice Sotomayor's concurrence. You could say she's calling out the court as he does. But I think she's also just tracing the logic of the majority's opinion and identifying that its logic necessarily compels the conclusion that a judge shouldn't be punishing the defendant's violation conduct any more than the original offense. You know, Mr. Dousmer also did himself refer back to the original offense taking place in June 2020 and its state of some alarm in Philadelphia. And if he's thinking about that today, we would think the judge may just as well have been thinking about it some time ago. Again, on the subject of waiver for the third prong, I would refer the court to its 2011 Albertson decision or 2005 Paluvo decision. Just stating, I'm sure the rule with which your honors are familiar, not raising a point in the principal brief waives it. There was nothing stopping the government from raising its argument on the third prong and its principal brief. It didn't matter that a steris hadn't yet been decided at that point. It could have easily said, even if a steris comes down in Mr. Pennycook's favor, he should lose because he can't show prejudice. OK, that aside, your adversary is saying there's not error and it's not plain. Right. And my response to that was emphasizing that point by steris at 2-0-4-0. On the first issue, very quickly, your honor, I think it's notable that Mr. Zausner, in candor here, allowed that there's some reason to question the statement. He framed this in terms of the abuse of discretion standard. Which is deferential. It certainly is. But where the district court's discretion simply was not sound is to say that when we see so little effort to respect the defendant's right of confrontation, that this hearsay could suffice to take away his liberty for 15 more months. I mean, that's just a sort of shocking conclusion when you consider that this hearsay wouldn't have even been admissible in a civil proceeding. So while abuse of discretion is, of course, a deferential standard, I think to approve what happened here really would be to make the right of confrontation a dead letter in revocation proceedings. And that just goes too far. We know these proceedings tend to be somewhat casual. But this court needs to make clear that there do remain constitutional limits, especially for such a basic right as the right to confront the witnesses against you. Thank you, counsel. Thank you, your honor. We thank both counsel for their excellent briefs in this case and their oral arguments today. We'll take the case under advisement.